# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

C. FRANCES THOMAS,

    *Plaintiff*,

vs.

Case No. 10-2083-EFM

JOHNSON AGRI-TRUCKING and TONY JOE CANTRELL

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff C. Frances Thomas brings this diversity suit under Oklahoma law under theories of negligence and negligence per se. Thomas alleges that her spine was injured when Defendant Tony Joe Cantrell negligently operated a tractor trailer, causing an accident on U.S. Highway 60 in Vinita, Oklahoma on May 27, 2008. Defendant Johnson Agri-Trucking was a carrier-lessee, leasing the truck Cantrell was driving.

Before the Court is Defendant Johnson Agri-Trucking's Motion for Summary Judgment (Doc. 47). For the following reasons, the Court denies Defendant's motion.

### I. Factual and Procedural Background

Defendant Johnson Agri-Trucking (Johnson Trucking), a Federal Highway Administration authorized motor carrier, began leasing a tractor from Twin C Livestock (Twin C) on June 4, 2007. Pursuant to this Independent Contractor Permanent Lease Agreement (Agreement), Twin C supplied the tractor and a driver, Defendant Tony Joe Cantrell (Cantrell). Johnson Trucking compensated

Twin C by the load. Cantrell allegedly operated this tractor negligently and was involved in an accident with Plaintiff C. Frances Thomas (Thomas) in Vinita, Oklahoma on May 27, 2008. Thomas suffered injuries as a result of this accident. Johnson's logo or placard was attached to Cantrell's tractor when the accident occurred.[1]

At the time of the accident, Cantrell was operating pursuant to the Agreement, which contained a choice-of-law clause mandating the use of Kansas law for issues arising under the contract. According to the agreement, Twin C was solely responsible for maintaining and operating the equipment; maintaining and paying for bobtail, public liability, and cargo insurance on the tractor; paying necessary taxes, tolls, maintenance expenses, and fuel; and employing drivers. Cantrell was responsible for maintaining driver's logs which he turned over to Johnson Trucking weekly.

The agreement also provided that, once executed, it was in effect until cancelled by either party. It further stipulated that Johnson Trucking assumed exclusive control and complete responsibility for the equipment, had authority to inspect the equipment at any time, had the choice of insurer for public liability and cargo insurance, had the right of approval for hiring, and would provide necessary registration, permits, reports and stickers.

Johnson Trucking did not tell Cantrell how to get to his destination or what time to start working. If Cantrell did not want to take a load for Johnson Trucking, he was not required to do so. Nonetheless, up to and including the time of the alleged accident, Cantrell was not operating the tractor for anyone other than Johnson Trucking.

---

[1]Because Defendant Johnson Trucking has not filed a reply, Plaintiff's additional statements of facts are deemed uncontroverted.

Cantrell maintains that when the accident occurred, he was on his way home after picking up his initial load because there was not enough time to make all of his planned stops.

Defendant Johnson Trucking seeks summary judgment, arguing that regardless of whether Kansas or Oklahoma law applies, it cannot be held vicariously liable because Cantrell was an independent contractor. Johnson Trucking further argues that even if Cantrell is deemed an employee, it is not liable under *respondeat superior* because he was on his way home.

Plaintiff Thomas opposes the motion, arguing that 49 C.F.R. § 376.12(c) creates an irrebuttable presumption of employment, making Johnson Trucking liable as a matter of law because Cantrell became its statutory employee. Thomas alternatively argues that Johnson Trucking is liable because the agency relationship between it and Cantrell remains controverted.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3] A fact is "material" when "it is essential to the proper disposition of the claim."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Id.*

[5] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[7] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10] *Adler*, 144 F.3d at 671.

[11] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12] *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[13] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Analysis

**A. Lease or Logo Liability**

Defendant Johnson Trucking claims summary judgment is proper because Defendant Cantrell is an independent contractor. Plaintiff counters that because Defendant Johnson Trucking is a carrier-lessee, it is vicariously liable for Cantrell's alleged negligence as a matter of law. As an authorized motor carrier, Johnson Trucking must be in compliance with the Federal Motor Carrier Safety Regulations (FMCSR). Citing a portion of the FMCSR, which has come to be known as the Interstate Commerce Commission's (ICC) control regulation, Plaintiff Thomas argues that Defendant Cantrell was a statutory employee of Defendant Johnson Trucking, and that Johnson Trucking cannot escape liability by entering an independent contractor agreement.[14] That regulation, 49 C.F.R. § 376.12 (c)(1), states:

> The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lease shall assume complete responsibility for the operation of the equipment for the duration of the lease.

Before 1986, the language regarding exclusive possession, control, and use of the equipment led to a circuit split as to whether this regulation created a rebuttable or an irrebuttable presumption of employment.[15] In 1983, the Tenth Circuit addressed this issue in *Rodriguez v. Ager*, and held that

---

[14] 49 C.F.R. § 376.12 was enacted by the ICC and was formerly codified 49 C.F.R. § 1057.12. The ICC Termination Act of 1995 ("ICCTA") (Pub. L. 104-88) became effective January 1, 1996, and eliminated unnecessary ICC regulatory functions and transferred residual functions partly to the Surface Transportation Board within the DOT and partly to the Secretary of Transportation. Section 204 of the ICCTA provides that all rules legally enacted by the ICC that are not based upon repealed law or were not substantially reenacted by the ICCTA remain in effect after the sunset of the ICC until modified, terminated, superseded, set aside or revoked. Notice of the continuation of these rules was issued by the Federal Highway Administration on March 25, 1996 (61 FR 14372-01). Because the bulk of caselaw refers and continues to refer to the ICC, this Court will do so as well for the sake of clarity.

[15] *See* R. Clay Porter & Elenore Cotter Klingler, *The Mythology of Logo Liability: An Analysis of Competing Paradigms of Lease Liability for Motor Carriers*, 33 Transp. L.J. 1, 6–9 (2005–06).

because ICC regulations required a lessee to be responsible for all equipment leased to it, a lessee was liable for the actions of a driver employed by the lessor as a matter of law.[16] This liability extended to the lessee whenever the tractor bore the lessee's placards or logos.[17] This holding is commonly referred to as the logo liability rule.[18]

The ICC disavowed the logo liability rule in 1986, and noted that its regulations were never intended to create statutory employment.[19] "[O]ur leasing rules do not and are not intended either to assign liability based on the existence of placards or to interfere with otherwise applicable State law."[20] Furthermore, the ICC noted that "[t]he Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist. Our regulations should have no bearing on this subject. Application of State law will produce appropriate results."[21]

---

[16] 705 F.2d 1229 (10th Cir. 1983); *see also Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co.*, 868 F.2d 357, 363 (10th Cir. 1989) (interpreting *Rodriguez*, 705 F.2d 1229).

[17] *Rodriguez*, 705 F.2d at 1230–31, 1236.

[18] *Mercer Transp. Co. v. Greentree Transp. Co.*, 341 F.3d 1192, 1195 n.3 (10th Cir. 2003).

[19] In addition to interpreting the language in what is now 49 C.F.R. § 376.12 (c)(1), the *Rodriguez* holding was further predicated on 49 C.F.R. § 1057.4(d) (1985). 705 F.2d at 1232. This regulation required a carrier to remove identifying legends on the tractor and obtain a receipt specifically identifying the returned equipment to terminate a lease. *Graham v. Malone Freight Lines, Inc.*, 948 F. Supp. 1124, 1133 n.14 (D. Mass. 1996). Because of this regulation, *Rodriguez* held that when a former carrier-lessee had not yet recovered its placards from a tractor, it "was [still] irrebuttably deemed to be the lessee of the equipment and the statutory employer of the driver." *Mercer*, 341 F.3d at 1195.
    The ICC repealed 49 C.F.R. § 1057.4(d) in 1986, replacing it with what is now 49 C.F.R. 376.12(e) which states, in relevant part, that "[t]he lease shall clearly specify which party is responsible for removing identification devices from the equipment upon the termination of the lease and when and how these devices . . . will be returned to the carrier." In its notes to the amendment, the ICC further stated that its rules should not be used to assign liability based on placards left on a vehicle.

[20] *Ex Parte No. MC-43 (SUB-NO 16)*, Lease and Interchange of Vehicles (Identification Devices), 3 I.C.C. 2d 92, 93 (1986).

[21] *Id.*

In 1992, to provide even greater clarification of its intentions, the ICC modified what is now 49 C.F.R. § 376.12(c) by adding subsection (4) which provides:

> Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements.

In its notes concerning this new regulation, the ICC stated that some courts had interpreted the language of its control regulation in § 376.12(c)(1) to be prima-facie evidence of an employee-employer relationship.[22] The ICC "conclude[d] that adopting the proposed amendment will reinforce our view of the neutral effect of the control regulation and place our stated view squarely before any court or agency asked to interpret the regulation's impact."[23]

The ICC's comments on its own regulations suggest that a carrier cannot be irrebuttably deemed a lessee solely by the presence of its placards on a tractor, and that any agency relationship is to be determined by applicable state law. As a general rule, an agency's interpretation of its own regulations is controlling. "[A] court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt."[24] Furthermore, "provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"[25] When the functional purpose of commentary is to assist application and interpretation of regulations, it is

---

[22]*Ex Parte No. MC-203*, Petition to Amend Lease and Interchange of Vehicle Regulations, 8 I.C.C. 2d 669, 671 (1992).

[23]*Id.*

[24]*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

[25]*Stinson v. United States*, 508 U.S. 36, 45 (1993) (quoting *Bowles*, 325 U.S. at 414).

to be given the same weight as an agency's interpretation of its own regulations.[26] Prior judicial interpretations also do not prevent an administrative agency from adopting a later conflicting interpretation of its own guidelines.[27]

No circuits, including the Tenth Circuit, have addressed whether the logo liability rule has continued viability in the wake of the ICC regulations implemented after *Rodriguez* when a lease agreement is indisputably in effect.[28] But, some circuits have concluded that the ICC commentary prohibits imposing an irrebuttable presumption of statutory employment upon a lessee when the lessee has terminated the lease agreement even when the lessee's placards remain on the vehicle.[29] This Court finds the reasoning from the other circuits disavowing the logo liability rule in such circumstances persuasive.

While *Rodriguez* addressed liability when a lease was in the process of being terminated, Plaintiff relies on it to support statutory employment as a matter of law when the lease is still in effect. Although *Rodriguez* never actually created an irrebuttable presumption of statutory employment, much of the caselaw before 1992 from other circuits did, so some discussion is warranted.[30]

---

[26]*Id.*

[27]*Id.* at 46.

[28]*See Mercer*, 341 F.3d at 1196 n.4.

[29]*Jackson v. O'Shields*, 101 F.3d 1083, 1087–88 (5th Cir. 1996); *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 13 (1st Cir. 1999); *Ross v. Wall Street Sys.*, 400 F.3d 478, 480 (6th Cir. 2005).

[30]*Dietrich v. Albertsons Inc.*, 1995 WL 355246, at *9 (10th Cir. 1995) ("We did not *hold* in *Rodriguez* that federal law creates an irrebuttable presumption that a driver is the 'statutory employee' of the interstate lessee. Rather, we simply reiterated, through quotation, the policy enunciated by the Third Circuit."); *but see Carolina Cas. Ins. Co. v. Ins. Co. of N. Am.*, 595 F.2d 128, 137 n.29 (3d Cir. 1979) ("[F]ederal law in effect creates an irrebuttable presumption of an employment relationship between a driver and the lessee whose placards identify the vehicle."); *Proctor v. Colonial Refrigerated Transp., Inc.*, 494 F.2d 89, 92 (4th Cir. 1974) ("The . . . regulatory pattern clearly eliminates the independent contractor concept from such lease arrangements and casts upon [the lessee] full responsibility for the

Again, the ICC has stressed that the intention of 49 C.F.R. § 376.12(c)(4) was to establish that § 376.12(c)(1) does not affect carrier liability. "By presenting a clear statement of the neutrality of the regulation, we hope to bring a halt to erroneous assertions about the effect and intent of the control regulation."[31]  Furthermore:

> 'Congress intended that carriers who use leased equipment would be subjected to the same requirements . . . to which they would be subjected in using equipment owned by them[.]' . . . A carrier-lessee should not have greater liability, and certainly should not be strictly liable, for a negligent act of an owner-driver where such carrier would not be liable for a similar act of negligence by its own employees or when using its own equipment.[32]

Based on the revised regulation, the Court finds no reason that Johnson Trucking should be subjected to greater liability for leasing the equipment than it would be if it owned the equipment. Additionally, the *Rodriguez* decision, its progeny, and other similar decisions were made prior to the amendment and were animated with the concern that fly-by-night contracts would allow carrier-lessees and owner-drivers to skirt safety regulations yet avoid liability.[33]  Such is not the case here. Plaintiff does not suggest either Johnson Trucking or Cantrell violated any part of the FMCSR. Moreover, this was not a fly-by-night agreement because Johnson Trucking entered into the contract nearly a year before the accident, and the contract continued until cancelled by either party. Cantrell only operated the tractor for Johnson Trucking pursuant to what was titled a permanent agreement.

---

negligence of [the] driver of the leased equipment."); *Simmons v. King*, 478 F.2d 857, 867 (5th Cir.1973) (holding the trial court erred when not holding a lessee liable as a matter of law); *see also Wellman v. Liberty Mut. Ins. Co.*, 496 F.2d 131, 136 (8th Cir. 1974); *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 478 (3d Cir. 1961).

[31]*Ex Parte No. MC-203*, 8 I.C.C. 2d at 671.

[32]*Bays v. Summitt Trucking, LLC*, 691 F. Supp. 2d 725, 729 (W.D. Ky. 2010) (quoting *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 523 (6th Cir. 1991)).

[33]*See, e.g.*, *Rodriguez*, 705 F.2d at 1236; *Rediehs Express, Inc. v. Maple*, 491 N.E.2d 1006, 1012 (Ind. App. 1986).

As noted above, 49 C.F.R. § 376.12(c)(4) stipulates that "[a]n independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements." 49 U.S.C. § 14102 provides in relevant part:

> a) General authority of Secretary.--The Secretary may require a motor carrier . . . that uses motor vehicles not owned by it to transport property under an arrangement with another party to--
>
> (1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;
>
> . . .
>
> (3) inspect the motor vehicles and obtain liability and cargo insurance on them; and
>
> (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

The Independent Contractor Permanent Lease Agreement between Johnson Trucking and Twin C continued from the time and date signed until cancelled by either party. The contract was entered into on June 4, 2007, and was in effect when the accident occurred on May 27, 2008. Johnson Trucking compensated Twin C by the load. The contract stipulated that Twin C would provide monthly maintenance reports and that Johnson Trucking could inspect the equipment at any time. It further provided that Twin C would maintain bobtail, public liability and cargo insurance on all equipment with an insurer of Johnson Trucking's choosing. Moreover, even though 49 U.S.C. § 14102(a)(4) provides that the carrier will "have control of and be responsible for operating those motor vehicles" the Court notes this language is consistent with 49 C.F.R. § 376.12(c)(1), and for the reasons stated above, does not create an irrebuttable presumption of statutory employment.

Johnson and Twin C have met their statutory requirements, so the Court must analyze whether there was an employment or independent contractor relationship. Because 49 C.F.R. § 376.12 creates only a rebuttable presumption of agency, the court must analyze the respective liabilities of Cantrell and Johnson according to respective state law.

## B. Choice of Law

When a federal court sits in diversity, it must apply the substantive law of the state in which it sits, including that state's choice of law rules.[34] The court must therefore look to Kansas choice of law rules. In Kansas, the courts apply the traditional rule of *lex loci delicti* for tort claims.[35] Thus, "the law of the state where the tort occurred is applied to the substantive rights of the parties."[36] In this case, the accident occurred in Oklahoma, thus, Oklahoma law determines the substantive law for the purposes of determining tort liability.

Defendant Johnson Agri-Trucking, however, is party to this action due to vicarious liability not because of its alleged negligence. In *Brown v. Kleen Kut Mfg. Co.*, a product liability case, the plaintiff's hand was amputated after it was caught in a meat grinder while he was in Kansas.[37] The manufacturer, Kleen Kut, was a dissolved Ohio corporation. The Kansas Supreme Court determined that while Kansas law determined the nature of the cause of action available to the injured party, whether a dissolved corporation or its successor corporations could be held liable was determined

---

[34] *Deitchman v. Weiner*, 893 F. Supp. 1508, 1510 n.2 (D. Kan. 1995) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[35] *Brown v. Kleen Kut Mfg. Co.*, 238 Kan. 642, 644–45, 714 P.2d 942, 944–45 (1986).

[36] *Deitchman*, 893 F. Supp. at 1510 n.2.

[37] *Brown*, 238 Kan. at 643, 714 P.2d at 943.

by Ohio law.[38] "Although characterizing the case as contractual for the purpose of this issue and tortious for purposes of determining liability may seem disjointed, . . . it is the correct approach."[39] Moreover, "[w]here the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement."[40]

Here, Defendant Johnson Trucking is located in Kansas. It is uncontroverted that the Agreement stipulates that all issues arising under the contract shall be determined according to Kansas law. Johnson Trucking's vicarious liability, if any exists, is created because of its contract with Twin C. Therefore, while Oklahoma law determines tort liability, whether Johnson Trucking can be held vicariously liable is to be determined by Kansas law.

## C. Agency Relationship

Defendant Johnson Agri-Trucking first argues that it cannot be vicariously liable for Cantrell's alleged negligence because he was an independent contractor. There is no absolute rule for determining whether one is an independent contractor or employee; rather, each case is determined on its own facts.[41] Nevertheless, the right of control test has been used as the primary factor in determining the employment status of a party in several trucking cases.[42] The often repeated right of control test is:

---

[38]*Id.* at 646, 714 P.2d at 945.

[39]*Id.* at 645, 714 P.2d at 945 (quoting *Bonee v. L & M Constr. Chems.*, 518 F. Supp. 375, 379–80 (M.D. Tenn. 1981)).

[40]*O'Tool v. Genmar Holdings, Inc.*, 387 F.3d 1188, 1194 (10th Cir. 2004) (quoting *Brenner v. Oppenheimer & Co. Inc.*, 273 Kan. 525, 539, 44 P.3d 364, 375 (2002)).

[41]*Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 401, 250 P.3d 825, 833 (2011).

[42]*Id.* 45 Kan. App. 2d 390 at 403, 250 P.3d at 835.

[W]hether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.[43]

Based on the right to interfere or control, courts have found the right of control existed in a number of trucking cases similar to the case at bar.[44] Here, as Johnson Trucking has noted, there are a number of facts that suggest Cantrell was an independent contractor. But, there are also facts suggesting Cantrell was an employee. For example, Johnson Trucking required Cantrell to maintain and turn in weekly driver's logs as well as monthly maintenance reports. In addition, while Cantrell was to maintain liability and cargo insurance, Johnson Trucking chose the insurer. Johnson Trucking also had the right to inspect any equipment or documents at any time. There are factual issues to suggest that Johnson Trucking might have had a right of control over Cantrell, and thus, summary judgment is not proper.

---

[43]*Wallis v. Sec'y of Kan. Dept. of Human Res.*, 236 Kan. 97, 102-103, 689 P.2d 787, 792 (1984) (citing *Jones v. City of Dodge City,* 194 Kan. 777, 402 P.2d 108 (1965)).

[44]*Olds-Carter*, 45 Kan. App. 2d 390 at 404, 250 P.3d at 835 (holding right of control existed when a principal's hauling requests took precedence over other hauls, the driver had to submit weekly record of her hauls and the principal reserved the right to discharge the hauler); *Anderson v. Kinsley Sand & Gravel Inc.*, 221 Kan. 191, 198–99, 558 P.2d 146, 152 (1976) (holding where principal sometimes selected driver's route, and hauling was inherent part of principal's business operation facts that driver owned his own truck, paid his own expenses, and sometimes chose routes was of "little significance") *superseded on other grounds Hughes v. Inland Container Corp.*, 247 Kan. 407, 799 P.2d 1011 (1990); *Knoble v. Nat'l Carriers, Inc.*, 212 Kan. 331, 510 P.2d 1274 (1973) (holding that while owner-lessor was responsible for own expenses, was paid by the load, and had no prescribed days he had to work, he was still employee of carrier-lessee when contract stipulated lessee had exclusive control of tractor and controlled whether particular person could drive one of the units); *Watson v. W.S. Dickey Clay Mfg. Co.*, 202 Kan. 366, 373, 450 P.2d 10, 16 (1969) (deeming owner-lessor employee of carrier-lessee when contract stipulated lessor would employ drivers and maintain equipment subject to lessee's approval); *see also Wilbeck v. Grain Belt Transp. Co.*, 181 Kan. 512, 514–15, 313 P.2d 725, 727 (1957); *Shay v. Hill*, 133 Kan. 157, 299 P. 263, 264–65 (1931).
    The Court is mindful that the cases listed involved worker's compensation and that the policies behind workers compensation and third party liability are different. *O'Shea v. Welch*, 350 F.3d 1101, 1107 (10th Cir. 2003). However, the long line of cases cited suggest that a question of fact would exist under Kansas law for the purposes of determining Johnson Trucking's vicarious liability.

**D. Scope of Employment**

Johnson Trucking next argues that even if Cantrell was an employee, he was acting outside of the scope of his employment because he had testified he was heading home after picking up a load. A principal's liability for the negligent acts of his agent is controlled by "whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities."[45]

As noted above, the right of control depends on the existence of the right, not any actual interference. In this case, such right might exist at any time based upon the contractual stipulation that the lessee had the right to inspect any documents and equipment at any time. Moreover, because Cantrell had the freedom to choose his own routes, it is arguable as to whether he was operating within the scope of his employment when transporting a load even when heading home. As such, Johnson Trucking has failed to show there is no genuine issue of material fact, and summary judgment is denied.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is DENIED.

**IT IS SO ORDERED.**

Dated this 14th day of July, 2011.

*[signature: Eric F. Melgren]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[45]*Hughes v. Jones*, 206 Kan. 82, 87–88, 476 P.2d 588, 592 (1970).